IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| THOMAS FRANK SCHMIDT,<br><br>    Plaintiff,<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil No. 25-00226 MWJS-KJM<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND AND DENYING APPLICATION TO PROCEED IN FORMA PAUPERIS AS MOOT |

### INTRODUCTION

On May 30, 2025, pro se Plaintiff Thomas Schmidt filed a complaint against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1). ECF No. 1. Schmidt also applied to proceed in forma pauperis (IFP), that is, without prepayment of fees or security. ECF No. 2. In considering such an application, the court must screen the complaint and ensure, among other things, that the complaint states a claim for relief. For the reasons explained below, the court concludes that in its current form, the complaint does not meet these requirements. The court therefore DISMISSES the complaint with leave to amend and DENIES the IFP application as moot. Should Schmidt decide to amend his complaint, he must do so by July 30, 2025, and he must comply with the court's further instructions detailed later in this Order.

## BACKGROUND

Schmidt's claims arise from a burglary and vandalism of his car while parked on federal property. The complaint alleges that Schmidt is a United States Marine veteran with a 100 percent disability rating who relies heavily on his car for mobility. ECF No. 1, at PageID.2. On July 11, 2024, around 8:00 a.m., Schmidt parked his car in a designated handicap stall at the Navy Exchange (NEX) Car Care Center in Honolulu, Hawaiʻi, on Department of Navy property. *Id.* at PageID.3. Schmidt's car, which "had two flat tires and was not drivable," remained there overnight. *Id.* Between 9:30 p.m. and 10:00 p.m., Schmidt "left the vehicle" at the car center "unattended . . . as there were no employees present." *Id.*

The following day, Schmidt "received a call from federal law enforcement advising that his vehicle had been vandalized and burglarized." *Id.* "[T]hree windows had been shattered," and a number of Schmidt's personal belongings were missing, including "tools, keys to commercial and agricultural equipment, legal records related to ongoing litigation, cash, and irreplaceable personal property." *Id.* Surveillance footage from the NEX facility apparently "confirmed that unauthorized individuals broke into the vehicle." *Id.* But the "quality of the footage prevented identification of the perpetrators," and so "no responsive action was taken by security personnel." *Id.*

Although the break-in was recorded, the complaint alleges that it was "not intercepted, investigated in real-time, or responded to by any law enforcement or

security presence." *Id.* This failure to stop or investigate the incident "suggests" to Schmidt "that no law enforcement or security patrols were scheduled or present during the critical hours in which the crime occurred." *Id.* at PageID.5. The complaint further alleges that the United States had "notice" of the high rates of motor vehicle break-ins and other property crimes in the City and County of Honolulu based on its participation in Honolulu Neighborhood Board meetings, and so it had a "corresponding duty to act with greater care to prevent foreseeable criminal activity on its premises." *Id.* at PageID.4.

Attached to Schmidt's complaint is a December 6, 2024, letter from the Department of the Navy, indicating that Schmidt first pursued an administrative claim with the Navy for damages in the amount of $20,750, but the Navy denied his claim. ECF No. 1-6, at PageID.21. Schmidt filed his complaint in this court on May 30, 2025, asserting a negligence claim and a separate negligent bailment claim, all under the FTCA. ECF No. 1, at PageID.4-5. Schmidt seeks actual damages for his personal property in the amount of $20,750, as well as consequential damages of $26,100. *Id.* at PageID.5-6.

## DISCUSSION

### A.   Screening of Schmidt's Complaint

Because Schmidt asks to proceed without prepayment of fees, the court must screen his complaint. *See* 28 U.S.C. § 1915(e)(2). Schmidt is a pro se litigant, and so the

3

court liberally construes his pleadings. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). But the court still must dismiss his complaint if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from defendants who are immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

Even construed liberally, dismissal of the complaint is required here because it fails to state a claim upon which relief can be granted. In evaluating whether a complaint states a claim for screening purposes, courts apply Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under that standard, a complaint must offer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires more than mere "labels and conclusions," *id.* at 555; the facts alleged must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Schmidt's complaint is brought under the FTCA, which acts as a limited waiver of sovereign immunity for torts committed by federal employees within the scope of their employment.[1] *See* 28 U.S.C. § 1346(b)(1). To proceed under the FTCA, a plaintiff

---

[1] Given his reliance on the FTCA for his claims, Schmidt appears to allege that employees of the United States should have conducted law enforcement or security patrols or otherwise provided additional security to the area in which his vehicle had been located. If Schmidt does wish to make this allegation, he should make it clearly in any amended complaint. The court recognizes that an exception to the FTCA's waiver

4

must show that the United States would be liable "to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *see also Panion v. United States*, 385 F. Supp. 2d 1071, 1074-75 (D. Haw. 2005). That is, Schmidt must plausibly allege that the conduct of the government violated the law of the state where the alleged tort occurred. *See* 28 U.S.C § 1346(b)(1).

Schmidt's claims are founded on theories of negligence. To state a negligence claim under Hawaiʻi law, a plaintiff must show "(1) the existence of a duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a breach of the duty," that is, a failure to conform to the required standard of care owed; "(3) a reasonably close causal connection between the breach and the resulting injury to the

---

of sovereign immunity exists for claims that are based on "the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). That is to say, the Government cannot be sued for decisions that involve discretionary judgement—even if those decisions turn out to be wrong or carried out poorly. This exception might well apply to the claims asserted in Schmidt's complaint, which involve an alleged failure to adequately surveil the car center's parking lot. *See Sigman v. United States*, 217 F.3d 785 (9th Cir. 2000) (holding that claims based on the adequacy of security measures at an Air Force base were barred by the discretionary function exception); *Plater v. United States*, 359 F. Supp. 3d 930 (C. D. Cal. 2018) (concluding the discretionary function exception applied to claims against the United States for negligent failure to train, hire, and supervise TSA employees). But the court does not definitively decide the issue at this screening stage, both because the United States bears "the burden of proving that the discretionary function exception applies," *Sigman*, 217 F.3d at 793, and because the court's resolution of this issue would benefit from briefing by the United States.

plaintiff; and (4) actual loss or damage suffered by the plaintiff." *Panion*, 385 F. Supp. 2d at 1089; *see also Takayama v. Kaiser Found. Hosp.*, 82 Hawai'i 486, 498-99, 923 P.2d 903, 915-16 (1996).

Under ordinary circumstances, landowners do not have a duty to protect against the criminal acts of a third party because "criminal acts are not reasonably to be expected." *Moyle v. Y & Y Hyup Shin, Corp.*, 118 Hawai'i 385, 392, 191 P.3d 1062, 1069 (2008) (cleaned up). A duty might be established, however, through a "special relationship" between the landowner and the plaintiff. *Id.* One such special relationship "is that of the business visitor," who is invited to the land for a purpose "connected with business dealings with the possessor of the land." *Id.* (cleaned up). Under these circumstances, the landowner assumes a duty to protect against the "reasonably foreseeable" criminal acts of third parties. *Id.* (cleaned up).

Here, Schmidt alleges that he left his car overnight in the handicap stall[2] of the NEX Car Care Center lot. But he does not provide enough facts to establish that the

---

[2]     Schmidt alleges that he is entitled to damages in relation to his negligence claim under the FTCA because of Defendant's "failure to provide safe and effective access to a public accommodation under the Americans with Disabilities Act (ADA), 42 U.S.C § 12182(b)(1)(A)." ECF No. 1, at PageID.4. But the ADA and the FTCA are two distinct statutory bases for claims—and he has not separately alleged a violation of the ADA. Nor do the facts laid out in Schmidt's complaint support a separate ADA claim. He does not, for example, allege that the United States failed to provide entry to the car center in accordance with the ADA. Similarly, he does not allege that United States employees failed to provide him a reasonable accommodation for his disability, or that his disability played any role in the vandalism and burglary of his car.

United States owed him a duty to protect his car from break-ins and property crimes while parked there. First, Schmidt does not clearly allege who had a duty: it is not clear whether he is alleging that an NEX Car Care Center employee or federal law enforcement should have been responsible for monitoring his car. *See* 28 U.S.C. § 2671; 32 C.F.R. § 750.23(c) (noting that government employees include "officers or employees of any Federal agency, members of the U.S. military or naval forces, and persons acting on behalf of a Federal agency in an official capacity," certain government contractors, and employees of nonappropriated-fund activities, which "include Navy and Marine Corps Exchanges"). Second, Schmidt does not adequately allege a special relationship. He does not, for example, allege that he left his car in the handicap stall overnight pursuant to a business deal with the car center that it would fix his car's two flat tires. And while Schmidt may well have been a customer of the car center, he must expressly allege as much to support his claim for relief.

Nor does Schmidt set forth enough facts to plausibly allege that the criminal act was reasonably foreseeable. To be sure, he broadly alleges that the United States had "notice" of elevated crime rates in Honolulu, including vehicle break-ins and other property crimes, based on its regular attendance at Honolulu Neighborhood Board meetings. ECF No. 1, at PageID.3-4. But Schmidt does not allege the foreseeability of crime specifically in the NEX Car Care Center lot. He does not, for example, allege that the United States was on notice of prior theft or property damage within the lot.

Schmidt separately asserts the more specific theory of negligent bailment, which arises from the special relationship between a bailor and bailee. "A bailment is a delivery of personal property by one person to another in trust for a specific purpose, with an express or implied contract that the property will be returned or accounted for when the specific purpose has been accomplished or when the bailor reclaims the property." *Miller v. Honolulu Police Dep't*, Civ. No. 23-00129, 2025 WL 580215, at *10 (D. Haw. Feb. 21, 2025) (cleaned up). A bailee assumes a duty to "use ordinary care and diligence in the safeguarding of the bailor's property." *United Truck Rental Equip. Leasing, Inc. v. Kleenco Corp.*, 84 Hawaiʻi 86, 90, 929 P.2d 99, 103 (App. 1996). To create a bailment relationship, there must be an "intent to create a bailment, delivery of possession of the bailed items, and acceptance of the items by the bailee." *Waugh v. Univ. of Haw.*, 63 Haw. 117, 132, 621 P.2d 957, 968 (1980).

This claim fails for the same basic reason: Schmidt does not allege that he had contracted with the car center for services to his vehicle. And if Schmidt merely left his vehicle in the car center lot on his own accord, the car center would owe no duty to him. That is because a bailment relationship typically must be consensual; there must be acceptance of the items by the bailee. Again, to state a claim for relief, Schmidt must allege that he delivered his car to the car center and entered into a bailment relationship with the business in his complaint. And he must plausibly allege that the car center did not use ordinary care and diligence under the circumstances.

For the foregoing reasons, the complaint's negligence and bailment claims are DISMISSED without prejudice.

### B.     Leave to Amend

Although the court dismisses the complaint, it recognizes that Schmidt is proceeding pro se and could possibly cure the complaint's deficiencies through amendment. The court therefore GRANTS Schmidt leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Any amended complaint must be filed by July 30, 2025, and it must cure the deficiencies identified in this Order. It must comply with the Federal Rules of Civil Procedure and this court's Local Rules. These include Local Rule 10.4, which requires Schmidt to "reproduce the entire pleading as amended"; he "may not incorporate any part of a prior pleading by reference." Schmidt is cautioned that failure to timely file an amended complaint that addresses the deficiencies identified in this Order will result in the automatic dismissal of this case.[3]

---

[3]     In amending his complaint, Schmidt should also consider the following. Section 2675(b) of the FTCA states that a plaintiff generally cannot seek more damages in court than the amount claimed in the administrative complaint, unless the increase is supported by "newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency," or "intervening facts" that arose between the filing of the administrative claim and filing of a complaint. *See Salzwedel v. United States*, No. CV-16-00501, 2018 WL 460892, at *6-7 (D. Ariz. Jan. 18, 2018). Schmidt attached to the complaint in this action a completed Standard Form 95 (SF-95), which asserted $20,750 for the damage to his car and the related losses. ECF No. 1-4, at PageID.18-19. But in his complaint, Schmidt seeks $46,850 in damages, which includes the initial $20,750, plus an additional $26,100 for "emotional distress, loss of vehicle use,

## C. Schmidt's In Forma Pauperis Application

Because the complaint fails to state a claim, the court DENIES the IFP application as moot and does not decide the application's sufficiency. By July 30, 2025, together with any amended complaint, Schmidt must either submit a new IFP application or pay the filing fees in full.

While the court does not decide the sufficiency of the existing IFP application, the court notes that the application does not detail Schmidt's income and expenses in full. The current IFP application states that Schmidt receives disability compensation from the Department of Veteran Affairs, but it does not appear to state the amount of those benefits. Nor does the application list Schmidt's monthly expenses. Should Schmidt decide to submit a new IFP application, he must complete it in its entirety, and he must explain with particularity why he "cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)).

//

//

//

---

loss of business revenue, diminished independence, and impairment of his ability to participate in legal proceedings." *Id.* PageID.6. In any amended complaint, Schmidt should either limit the damages to the amount requested in his SF-95 form or explain how the additional $26,100 in damages arose out of newly discovered evidence or intervening facts since the filing of his administrative claim.

## CONCLUSION

For the foregoing reasons, the court DISMISSES Schmidt's complaint, ECF No. 1, GRANTS Schmidt leave to amend, and DENIES Schmidt's IFP application, ECF No. 2, as moot.

If Schmidt elects to file an amended complaint, he must comply with the following requirements:

(1) the deadline to file an amended complaint is July 30, 2025;

(2) the amended complaint must be titled "First Amended Complaint;"

(3) the amended complaint must cure the deficiencies identified above; and

(4) by the same deadline, Schmidt must either submit a new IFP application or pay the filing fees associated with this action.

Schmidt is cautioned that failure to timely file an amended complaint that cures the deficiencies identified in this Order and to either file a new IFP application or pay the necessary filing fees will result in automatic dismissal of this action.

IT IS SO ORDERED.

DATED: June 30, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 25-00226 MWJS-KJM; *Thomas Frank Schmidt v. United States*; ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND AND DENYING APPLICATION TO PROCEED IN FORMA PAUPERIS AS MOOT